UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
-----------------------------X
                             :
ROBERT STEVENSON             :    Civil No. 3:21CV00234(SALM)
                             :
v.                           :
                             :
ANGEL QUIROS, et al.         :    January 19, 2022
                             :
-----------------------------X
```

**INITIAL REVIEW ORDER**

Self-represented plaintiff Robert Stevenson ("plaintiff") is a sentenced inmate in the custody of the Connecticut Department of Correction ("DOC"), currently confined at MacDougall-Walker Correctional Center ("MacDougall").[1] Plaintiff proceeds in forma pauperis. See Doc. #8. He brings this action pursuant to 42 U.S.C. §§1983, 1985, and 1986 against Commissioner Angel Quiros, Health Services Director Dr. Byron Kennedy, and the following DOC employees alleged to work at Corrigan-Radgowski Correctional Center ("Corrigan"): Warden

---

[1] The Court may "take judicial notice of relevant matters of public record[.]" Sanchez v. RN Debbie, No. 3:18CV01505(JCH), 2018 WL 5314916, at *2 n.4 (D. Conn. Oct. 26, 2018) (quoting Giraldo v. Kessler, 694 F.3d 161, 164 (2d Cir. 2012) (quotation marks omitted)). The Court takes judicial notice of the Connecticut DOC website, which reflects that Stevenson was sentenced on October 30, 2015, to a term of imprisonment that has not expired, and that he is currently confined at MacDougall. See http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=405287 (last visited Jan. 18, 2022).

Robert Martin; Health Services Remedy Coordinator Janine Brennan, RN; Administrative Remedies Coordinator Michelle King; Advanced Practice Registered Nurse ("APRN") Chena McPherson; and Unit Manager Lieutenant Jonathan Peau. See Doc. #1 at 2-4. Plaintiff asserts that "defendants were deliberately indifferent to the serious medical needs [of] the plaintiff as related to the provision of appropriate and adequate bedding[.]" Id. at 5. Plaintiff contends that defendants' actions violated "the Eighth and Fourteenth Amendments to the United States Constitution, and a First Amendment right to seek redress." Id. at 1. The Court construes the Complaint as asserting a claim pursuant to the Eighth Amendment for deliberate indifference to serious medical needs, and for cruel and unusual conditions of confinement. Plaintiff brings these claims against all defendants "in both their official and individual capacities." Id. at 4. Plaintiff seeks declaratory and injunctive relief, as well as an award of damages. See id. at 16.[2]

I.  **LEGAL STANDARD**

Under section 1915A of Title 28 of the United States Code, the Court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or

---

[2] This matter was transferred to the undersigned on October 15, 2021, at which time no initial review of the Complaint had been conducted. See Doc. #11.

employee of a governmental entity." 28 U.S.C. §1915A(a). The
Court then must "dismiss the complaint, or any portion of the
complaint, if" it "is frivolous or malicious, or fails to state a
claim upon which relief may be granted, or seeks monetary relief
from a defendant who is immune from such relief." 28 U.S.C.
§1915A(b). The commands of §1915A "apply to all civil complaints
brought by prisoners against governmental officials or entities
regardless of whether the prisoner has paid the filing fee." Carr
v. Dvorin, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam).
Dismissal under this provision may be with or without prejudice.
See Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004).

    A civil complaint must include sufficient facts to afford
defendants fair notice of the claims and the grounds upon which
they are based and to demonstrate a plausible right to relief.
See Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007).
Conclusory allegations are not sufficient. See Ashcroft v. Iqbal,
556 U.S. 662, 678 (2009). Rather, a plaintiff must plead "enough
facts to state a claim to relief that is plausible on its face."
Twombly, 550 U.S. at 570.

    It is well-established that complaints filed by self-
represented litigants "'must be construed liberally and
interpreted to raise the strongest arguments that they suggest.'"
Sykes v. Bank of Am., 723 F.3d 399, 403 (2d Cir. 2013) (quoting
Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir.

2006)); <u>see also</u> <u>Tracy v. Freshwater</u>, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for self-represented litigants). However, even self-represented parties must comply with Rule 8 and the other rules of pleading applicable in all federal cases. <u>See</u> <u>Harnage v. Lightner</u>, 916 F.3d 138, 141 (2d Cir. 2019); <u>see also</u> <u>Wynder v. McMahon</u>, 360 F.3d 73, 79 n.11 (2d Cir. 2004) ("[T]he basic requirements of Rule 8 apply to self-represented and counseled plaintiffs alike.").

## II.  ALLEGATIONS OF THE COMPLAINT

The Court accepts the well-pleaded allegations of the Complaint as true for purposes of this initial review.

"[P]laintiff suffers from chronic debilitating [pain] in his back and shoulders, numbness in the legs and lower back and sharp, shooting nerve pain from the lower back to mid-thigh," which "limit[s] [the] range of motion in [his] lower back and legs." Doc. #1 at 6. Plaintiff's pain prevents him from exercising, resulting in feelings of sluggishness, lethargy, and depression. <u>See</u> <u>id.</u> at 6-7. Plaintiff's pain also prevents him from comfortably sitting, standing, or laying down in one position for more than about 30 minutes at a time, which leads to sleep disruptions. <u>See</u> <u>id.</u> at 7.

Plaintiff contends that his pain "has become steadily worse since the occurrence of the events described" in the Complaint.

4

Id. at 6. The mattress provided to plaintiff at Corrigan was
approximately three inches thick brand new but compressed to
approximately one inch when in use and only rebounded to a
thickness of about two inches. See id. at 7-8. This thinning of
the mattress occurs because, plaintiff contends, the "mattresses
are designed for children with a **maximum** weight of seventy
pounds[,]" id. at 7, but plaintiff weighs about 150 pounds. See
id. at 8. "The mattresses utilized by the CTDOC consist of a
polyester batting core covered in a thick vinyl wrapping[.]" Id.
at 7. Plaintiff contends that these mattresses "flatten" over
time, becoming "extremely thin in some spots while retaining
about twice the thickness of the thinnest spots in others,
resulting in a mine-field of hard, lumpy patches of compressed
batting[.]" Id. at 8. The vinyl coating cracks, "leaving dozens
of tiny, sharp edges of cracked vinyl" that results in "small
cuts and abrasions[.]" Id. This deterioration results in the
mattresses becoming unusable within a week, but the DOC only
permits "mattress exchanges once per year." Id. at 8.

   "Prior to the CTDOC takeover of all prisoner medical
services it was routine for [CMHC] medical personnel to
prescribe prisoners, such as the plaintiff, with either a
'double mattress pass' or one type or another of mattress
supplement, such as 'egg crate' foam or memory foam." Id. at 9.

   On April 8, 2020, plaintiff submitted a request to medical

seeking a prescription for a "double mattress pass[,]" to which
Registered Nurse ("RN") Trickett responded that plaintiff "may
request a replacement from custody[.]" Id. at 10-11, 23.

On April 14, 2020, plaintiff submitted another request to
medical, again seeking a double mattress. See id. at 11, 24. RN
Trickett responded on April 15, 2020, that plaintiff's name was
placed on the sick call list on April 9, 2020, and that
plaintiff "may find exercise and stretches in [his] cell may
relieve back discomfort." Id. at 24. On or about May 16, 2020,
plaintiff was prescribed Tylenol for his back pain and told by a
medical staff member that "DOC custody controls who gets double
mattresses, not medical anymore." Id. at 11 (quotation marks
omitted).

On May 18, 2020, plaintiff wrote his unit counselor
requesting that he be provided with a double mattress. See id.
at 11, 33. On May 19, 2020, the counselor informed plaintiff to
"write to the unit manager[,]" defendant Peau, to seek a
replacement mattress. Id. at 33.

On May 24, 2020, plaintiff wrote medical advising he was
still suffering from "major pains in [his] back[]" and requested
a double mattress or foam egg crate bed topper. Id. at 11, 25.
On May 26, 2020, a medical staff member responded that his name
had been added to the sick call list. See id. at 25.

On May 25, 2020, plaintiff sent a request to Unit Manager

Peau stating that he had been told "custody is in charge of giving double mattress pass[es]" and requesting a double mattress to alleviate his back pain. Id. at 11, 35. Plaintiff received no response. See id.

On May 30, 2020, plaintiff was told by a nurse that he "was on the list to see 'the provider'" and advised him to continue to exercise and "write to Corrigan custody regarding the need for some sort of accommodation related to adequate bedding." Id. at 12. On that same date, plaintiff wrote Warden Martin, stating that he had been informed "that custody controls issuing double mattress[es]" and requesting one to help alleviate his back pain. Id. at 12, 36. On June 6, 2020, Warden Martin informed plaintiff that custody officials do not provide inmates with double mattresses and directed him to Unit Manager Peau. See id. On that same date, plaintiff wrote to Commissioner Cook requesting a double mattress. See id. at 12, 38. Plaintiff did not receive a response from Commissioner Cook. See id.

On June 10, 2020, Plaintiff wrote to the medical department seeking an appointment and requested that he undergo diagnostic testing to determine the cause of his pain and injuries to his back and shoulder. See id. at 12, 26. On June 11, 2020, a medical staff member indicated that plaintiff had been placed on the sick call list. See id.

On June 13, 2020, a nurse examined plaintiff's back, neck

and shoulders and observed bed sores on plaintiff's hips. See id. at 13. The nurse prescribed plaintiff 325mg of acetaminophen and placed him on a list to be seen by a medical provider. See id.

On June 24, 2020, plaintiff filed a request for a Health Services Review ("HSR") claiming that he was experiencing back pain and that he required medical treatment. See id. After about a month with no response, plaintiff filed a second request for a HSR. See id. On June 29, 2020, Plaintiff filed a Level I inmate grievance seeking a double mattress. See id. at 13, 22, 31.

On July 28, 2020, APRN McPherson examined plaintiff and acknowledged that the pain in his back was likely due, at least in part, to an inadequate mattress. See id. at 13. APRN McPherson prescribed 250mg of Naproxen to be taken twice a day and informed plaintiff that she could not prescribe him a double mattress or a foam supplement because only custody officials had the authority to do so. See id.

On July 30, 2021, Administrative Remedies Coordinator King returned plaintiff's June 29, 2020, Level I inmate grievance because the subject matter of the grievance -- a request for a double mattress -- was "not one for custody[]" and advised him to "file a health service review[.]" Id. at 13, 30.

On August 17, 2020, Health Services Remedy Coordinator Brennan rejected plaintiff's June 24, 2020, request for HSR. See

id. at 14, 21. She explained that the x-rays taken of
Plaintiff's spine after his appointment with APRN McPherson were
normal and that there was no clinical indication that he needed
a bottom bunk pass, a double mattress, or a foam mattress
supplement. Id. On September 11, 2020, plaintiff filed an appeal
of the HSR. See id. at 29. On October 1, 2020, the appeal was
denied because "medical does not issue mattresses or 'bed
toppings.'" Id.

At some point, the DOC changed its policy to allow custody
to issue orthopedic mattresses, however, this policy is "applied
unequally," and is based on favoritism, "irrespective of need."
Id. at 14.

## III. **DISCUSSION**

Plaintiff brings his claims pursuant to a variety of
theories, against all defendants in their official and
individual capacities. As set forth below, after initial review,
the Court finds that only the Eighth Amendment claims of
deliberate indifference to the conditions of confinement should
proceed to service of process.

### A.    **42 U.S.C. §§1985 and 1986**

Plaintiff asserts that he brings this action pursuant to 42
U.S.C. §§1985 and 1986 in addition to 42 U.S.C. §1983. See Doc.
#1 at 1. He does not otherwise refer to §1985 or §1986 in the
Complaint.

Section 1985 has three subsections. Section 1985(1) relates to conspiracies to prevent federal officials from performing their duties. Section 1985(2) relates to conspiracies intending to deter witnesses form participating in state or federal judicial proceedings. Neither of these subsections is relevant to the facts asserted in plaintiff's complaint. The Court thus considers whether §1985(3) is applicable.

Section 1985(3) prohibits certain conspiracies.

> A conspiracy claim under Section 1985(3) requires a plaintiff to allege: 1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

Dolan v. Connolly, 794 F.3d 290, 296 (2d Cir. 2015) (citations and quotation marks omitted). "In order to maintain an action under Section 1985, a plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." Webb v. Goord, 340 F.3d 105, 110 (2d Cir. 2013) (citations and quotation marks omitted). The Complaint does not adequately allege a §1985(3) conspiracy. The Complaint makes no factual allegations to support a finding of any "meeting of the minds," nor does plaintiff allege any racial or other unlawful discrimination. Accordingly, the Complaint fails to state a

10

claim for violation of §1985.

A claim may only proceed under §1986 if the plaintiff is able to establish a §1985 claim. See 42 U.S.C. §1986. Because plaintiff failed to establish a §1985 claim, the §1986 claim must also fail. See, e.g., Brown v. City of Oneonta, N.Y., 221 F.3d 329, 341 (2d Cir. 2000) ("And because a §1986 claim must be predicated on a valid §1985 claim, plaintiffs' §1986 claim was properly dismissed as well." (citation and quotation marks omitted)). Accordingly, any claims brought pursuant to §1985 and §1986 are **DISMISSED, without prejudice, pursuant to 28 U.S.C. §1915A.**

### B.   Official Capacity Claims

Plaintiff brings his claims against all defendants "in both their official and individual capacities." Doc. #1 at 4. He seeks declaratory relief, injunctive relief, and damages. See id. at 16.

"[T]he Eleventh Amendment bars a damages action against a State in federal court[,]" including "when State officials are sued for damages in their official capacity." Kentucky v. Graham, 473 U.S. 159, 169 (1985) (footnote omitted). Eleventh Amendment immunity is not abrogated by §1983. See Quern v. Jordan, 440 U.S. 332, 345 (1979). Accordingly, to the extent plaintiff seeks compensatory and punitive damages from the defendants in their official capacities, those claims for relief

11

are barred by the Eleventh Amendment and are **DISMISSED, with prejudice, pursuant to 28 U.S.C. §1915A.**

   **C.   Declaratory and Injunctive Relief**

Plaintiff seeks: (1) a declaratory judgment that "continued denial of adequate bedding by the defendants would be violative of the plaintiff's" Eighth and Fourteenth Amendment rights; (2) a declaratory judgment that RN Brennan's "continued scheme" of denying medical care would violate his First, Eighth, and Fourteenth Amendment rights; and (3) a mandatory injunction requiring that defendants provide plaintiff with "adequate bedding" and "appropriate medical care[.]" Doc. #1 at 16.

Plaintiff's allegations arise from his confinement at Corrigan from at least April 2020 to October 2020. However, plaintiff is no longer confined at Corrigan. See Doc. #10. "An inmate's transfer from a prison facility moots his claims for declaratory or injunctive relief against officials of the transferring facility." McCray v. Lee, 963 F.3d 110, 117 (2d Cir. 2020); see also Henderson v. Hannah, No. 3:20CV00559(SRU), 2020 WL 4432913, at *4 (dismissing as moot inmate's request for injunctive relief seeking a new mattress because inmate had been transferred from prison facility where he alleged he was provided with the defective mattress). Accordingly, to the extent plaintiff seeks declaratory or injunctive relief against

12

defendants alleged to work at Corrigan,[3] those claims are **DISMISSED, without prejudice to being reasserted if plaintiff is returned to Corrigan.**

> **D.  Supervisory Liability - Defendants Quiros and Kennedy**

Plaintiff appears to assert a claim of supervisory liability against defendants Quiros and Kennedy, asserting that they "knew or should have known" about the issues giving rise to his Complaint. See Doc. #1 at 2. He describes Angel Quiros as "the CTDOC Commissioner, with direct authority for the creation, implementation and enforcement of departmental policy and any injury caused by the creation, implementation and/or enforcement of said policies," and Dr. Byron Kennedy as "the CTDOC Correctional Health Services Director, charged with providing Connecticut state prisoners with adequate medical care which comports to the accepted community standards of care." Id. Defendants Quiros and Kennedy are mentioned only one other time in the Complaint; plaintiff alleges that these defendants knew "or should have known (via required audit)" about the "Returned Without Disposition scheme" allegedly employed by defendant Brennan. Id. at 14.

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under §1983,

---

[3] All defendants other than Quiros and Kennedy are alleged to work at Corrigan.

a plaintiff must show, <u>inter</u> <u>alia</u>, the defendant's personal
involvement in the alleged constitutional deprivation." <u>Grullon</u>
<u>v. City of New Haven</u>, 720 F.3d 133, 138 (2d Cir. 2013)
(collecting cases). A plaintiff "must therefore establish that
[each defendant] violated the Eighth Amendment by [his or her]
own conduct, not by reason of [his or her] supervision of others
who committed the violation. [Plaintiff] must show that [each
defendant himself or] herself acted with deliberate indifference
-- meaning that [he or she] personally knew of and disregarded
an excessive risk to [plaintiff's] health or safety." <u>Tangreti</u>
<u>v. Bachmann</u>, 983 F.3d 609, 619 (2d Cir. 2020) (citation and
quotation marks omitted).

Plaintiff does not allege that defendants Quiros and
Kennedy "personally knew of and disregarded an excessive risk
to" his health or safety. <u>Id.</u> He alleges only that these
defendants "knew or should have known of the issues giving rise
to this complaint based on preceding litigation in the District
of Connecticut addressing identical issues[.]" Doc. #1 at 2.
Even if these defendants were aware of a prior case in which
similar allegations were filed, that would not have put them on
notice of plaintiff's medical conditions, circumstances, or
alleged need for a new mattress or mattress supplement in 2020.
Plaintiff does not allege that he wrote or spoke to either
defendant regarding his medical conditions, the adequacy of his

mattress, or the way in which Health Services Remedy Coordinator Brennan had processed his requests for HSR.

Plaintiff has not alleged the direct personal involvement of either Commissioner Quiros or Dr. Kennedy in any deprivation of his rights. Accordingly, all claims against defendants Quiros and Kennedy in their individual capacities are **DISMISSED, without prejudice, pursuant to 28 U.S.C. §1915A.**

**E.   Fourteenth Amendment**

Plaintiff contends that defendants' "continued denial of adequate bedding by the defendants would be violative of the plaintiff's constitutional rights, as guaranteed by Eighth and Fourteenth Amendments[.]" Doc. #1 at 16. As a sentenced inmate, any conditions of confinement claim brought by Stevenson must be reviewed under the Eighth, not the Fourteenth, Amendment. See, e.g., Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017) (deliberate indifference claims of sentenced inmates are considered under the Eighth Amendment while claims of pretrial detainees are considered under the Fourteenth Amendment). Accordingly, any claims brought pursuant to the Fourteenth Amendment are **DISMISSED, with prejudice, pursuant to 28 U.S.C. §1915A.**

**F.   First Amendment**

Plaintiff contends that, in failing to properly process his request for HSR, defendant Brennan attempted to deter him from

15

filing a lawsuit in violation of his First Amendment right to seek redress of grievances. See Doc. #1 at 14, 16.

"[I]t is well settled that inmates have a constitutional right of access to the courts." Cooke v. Jones, No. 3:19CV00065(MPS), 2019 WL 2930009, at *6 (D. Conn. July 8, 2019) (citing Lewis v. Casey, 518 U.S. 343, 350 (1996)). This right may be "violated where government officials obstruct legitimate efforts to seek judicial redress." City of New York v. Beretta U.S.A. Corp., 524 F.3d 384, 397 (2d Cir. 2008) (citation and quotation marks omitted). "To state a claim for denial of access to the courts, a plaintiff must assert non-conclusory allegations demonstrating that (1) the defendant acted deliberately and maliciously, and (2) the plaintiff suffered an actual injury." Burroughs v. Petrone, 138 F. Supp. 3d 182, 210 (N.D.N.Y. 2015) (citing Lewis, 518 U.S. at 353). In order to constitute an "actual injury[,]" the harm alleged must include the frustration or dismissal of "an otherwise meritorious legal claim." Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003) (citation and quotation marks omitted). Only injuries to certain meritorious legal claims will trigger First Amendment protection, including prisoners' "direct appeals from the convictions for they were incarcerated," "habeas petitions," or "actions under 42 U.S.C. §1983 to vindicate basic constitutional rights." Lewis, 518 U.S. at 354 (citations and quotation marks

16

omitted).

Plaintiff has not demonstrated that he suffered an actual injury as a result of the way defendant Brennan processed and responded to his request for HSR. Even if Brennan did not process plaintiff's request in accordance with DOC Administrative Directive 8.9, as plaintiff suggests, plaintiff was not precluded from seeking redress for his claims through the filing of an appeal, nor did it preclude him from seeking redress in this Court. Accordingly, the First Amendment claim is **DISMISSED, without prejudice, pursuant to 28 U.S.C. §1915A.**

### G.  Eighth Amendment

The Court turns, finally, to the gravamen of plaintiff's Complaint. The Court construes the Complaint as asserting an Eighth Amendment claim for deliberate indifference to both (1) a serious medical need and (2) cruel and unusual conditions of confinement. See Doc. #1 at 6-14. Both claims rest on the same factual claim: that plaintiff was entitled, either as a form of medical treatment or as a condition of confinement, to a better mattress.

The United States Supreme Court has held that

deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with

17

> the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under §1983.

Estelle v. Gamble, 429 U.S. 97, 104-05 (citations, quotation marks, and footnotes omitted). "[O]nly those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson v. Seiter, 501 U.S. 294, 298 (1991) (citations and quotation marks omitted). A claim for deliberate indifference has two prongs, one objective and one subjective. See Hathaway v. Coughlin, 99 F.3d 550, 553 (1996). The objective prong requires a showing that the alleged deprivation is "sufficiently serious," and the subjective prong requires a showing that the "charged official" acted "with a sufficiently culpable state of mind." Id. (citation and quotation marks omitted).

### 1.   Denial of Medical Treatment

The Court construes the claims relating to denial of medical treatment as being brought against the two medical practitioners with whom plaintiff had direct contact, APRN McPherson and Nurse Janine Brennan.[4]

Under the objective prong of a denial of medical treatment

---

[4] All claims against Dr. Kennedy in his individual capacity have been dismissed for lack of personal involvement.

18

claim, an inmate must "show that he was actually deprived of adequate medical care by an official's failure to take reasonable measures in response to a sufficiently serious medical condition." Thomas v. Wolf, 832 F. App'x 90, 92 (2d Cir. 2020) (citations and quotation marks omitted). "A condition of urgency, one that may produce death, degeneration, or extreme pain must exist." Nails v. Laplante, 596 F. Supp. 2d 475, 480 (D. Conn. 2009) (citation and quotation marks omitted). The Second Circuit has identified a number of factors relevant to the question of seriousness, including "whether a reasonable doctor or patient would find it important and worthy of comment, whether the condition significantly affects an individual's daily activities, and whether it causes chronic and substantial pain." Young v. Choinski, 15 F. Supp. 3d 172, 182 (D. Conn. 2014) (citations and quotation marks omitted). A court may also consider whether the denial of medical care results in further injury or significant pain. See id.

Under the subjective prong, a defendant "must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his or her actions or inactions." Nails, 596 F. Supp. 2d at 480. "Mere negligence will not support a section 1983 claim; the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law. Thus, not every lapse in prison

medical care will rise to the level of a constitutional violation, rather, the conduct complained of must shock the conscience or constitute a barbarous act." Pimentel v. Deboo, 411 F. Supp. 2d 118, 128 (D. Conn. 2006) (citations and quotation marks omitted).

Plaintiff has asserted facts to suggest that during his confinement at Corrigan, he suffered from chronic and severe pain in his back, neck, and shoulders and numbness in his back and legs that interfered with his ability to sleep, stand, and sit for extended periods. The Court will assume, for purposes of this initial review only, that these allegations are sufficient to meet the objective component of the Eighth Amendment standard. See, e.g., Abreu v. Farley, No. 6:11CV06251(EAW), 2019 WL 1230778, at *10 (W.D.N.Y. Mar. 15, 2019) ("[C]ourts have held that severe back pain, especially if lasting an extended period of time, can amount to a serious medical need under the Eighth Amendment.") (citation and quotation marks omitted) (collecting cases). However, plaintiff has failed to meet the subjective component of such a claim.

"So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998). Plaintiff's claims against APRN McPherson and RN Brennan amount to no more than a disagreement

with their decisions not to provide him with an alternative
mattress.

i. *APRN McPherson*

Plaintiff alleges that APRN McPherson acted with deliberate
indifference to his medical need for new bedding. However, the
allegations are insufficient to suggest that APRN McPherson was
aware that her actions posed a substantial risk of harm to
plaintiff or that she acted with a sufficiently culpable state
of mind. Rather, plaintiff's allegations suggest only
disagreement and dissatisfaction with APRN McPherson's
evaluation and treatment decisions, and continued frustration
with not receiving new bedding.

The Court construes the Complaint as asserting an Eighth
Amendment claim against APRN McPherson for failing to prescribe
plaintiff "an appropriate mattress or a foam supplement," even
though she "acknowledged that the plaintiff's pain and suffering
likely was due to the poor bedding[.]" Doc. #1 at 13. APRN
McPherson advised plaintiff that she "did not have the authority
to prescribe" the bedding he was requesting and instead
prescribed him "250mg of Naproxin x2 daily[.]" Id. (sic). This
claim represents a mere disagreement with treatment decisions
and is insufficient to rise to the level of a constitutional
violation. "A claim based on an inmate's disagreement with the
defendant's medical judgment as to the proper course of

treatment cannot support a constitutional claim for deliberate indifference. And it is generally understood that the ultimate decision of whether or not to administer a treatment or medication is a medical judgment that, without more, does not amount to deliberate indifference." Laurent v. Edwin, 528 F. Supp. 3d 69, 87 (E.D.N.Y. 2021) (citations and quotation marks omitted). Accordingly, the claim against APRN McPherson is **DISMISSED, without prejudice, pursuant to 28 U.S.C. §1915A.**

ii. *RN Brennan*

Plaintiff alleges that RN Brennan acted with deliberate indifference to his medical needs by rejecting his request for a HSR on August 17, 2020. See Doc. #1 at 14. Defendant Brennan rejected[5] plaintiff's request because plaintiff's x-rays were normal, so there was "[n]o clinical indication for bottom-bunk or double mattress/bed topping." Doc. #1 at 21.

The Court construes the Complaint as asserting an Eighth Amendment claim against defendant Brennan for failing to approve plaintiff's requested remedy of new back x-rays and new bedding. Again, this claim represents a mere disagreement with treatment decisions and is insufficient to rise to the level of a

---

[5] Plaintiff alleges that defendant Brennan returned this form "Without Disposition[.]" Doc. #1 at 14 (quotation marks omitted). However, a copy of the form attached to the Complaint shows that the request was "Rejected[]" on August 17, 2020. Id. at 21.

constitutional violation. Accordingly, the Eighth Amendment claim against defendant Brennan is **DISMISSED, without prejudice, pursuant to 28 U.S.C. §1915A.**

### 2.   Conditions of Confinement

Plaintiff next contends that he suffered pain in his back, neck, and shoulders as a result of the defendants' refusal to give him "adequate bedding[.]" Doc. #1 at 16. The Court construes this claim as being brought against all defendants.

"The Eighth Amendment does not mandate comfortable prisons, but prisons nevertheless must provide humane conditions of confinement[.]" Willey v. Kirkpatrick, 801 F.3d 51, 66 (2d Cir. 2015) (citations and quotation marks omitted)). "[S]leep is critical to human existence, and conditions that prevent sleep have been held to violate the Eighth Amendment." Walker v. Schult, 717 F.3d 119, 126 (2d Cir. 2013) (collecting cases).

To satisfy the objective prong of a claim that a deficient mattress constituted a deprivation of basic human need in violation of the Eighth Amendment, the plaintiff must allege either: (1) "he had a medical condition requiring a non-standard bed to protect against serious damage to his future health" or (2) "that the medical condition was itself created by an inadequate bed or mattress." Jones v. City of New York, No. 18CV01937(VSB), 2020 WL 1644009, at *7 (S.D.N.Y. Apr. 2, 2020) (citations and quotation marks omitted).

To satisfy the subjective prong, plaintiff must allege that the defendants possessed culpable intent; that is, the officials knew that he or she faced a "substantial risk" to his or her health or safety and "disregard[ed] that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994). Thus, an allegation of "mere negligen[t]" conduct is insufficient. Id. at 835.

Plaintiff alleges that the quality of the mattress provided to him resulted in the worsening of his pain and that he has been unable to get an uninterrupted night's sleep because of that mattress. See Doc. #1 at 6-8.

The Court is deeply skeptical that the allegations regarding the quality of the mattress, which is the standard mattress issued to all inmates, are sufficient to satisfy the high standards applicable to Eighth Amendment conditions of confinement claims. For initial pleading purposes, plaintiff has adequately alleged that the defendants' failure to exchange his mattress has resulted in the worsening of his medical condition, thus meeting the objective prong. The undersigned is aware that, on initial review, similar allegations have been permitted to proceed to service of process. See, e.g., Henderson v. Quiros, No. 3:21CV01078(VAB), 2021 WL 5359739, at *5 (D. Conn. Nov. 17, 2021). However, there is a line to be drawn. Undoubtedly, at some point, the lack of adequate bedding provided to an inmate,

particularly when coupled with pre-existing, serious medical conditions, will rise to the level of cruel and unusual punishment. But not every uncomfortable mattress violates the Constitution.

The central allegations of the Complaint relating to the mattress are: "The mattresses utilized by the CTDOC consist of a polyester batting core covered in a thick vinyl wrapping[.]" Doc. #1 at 7. These mattresses allegedly "flatten" over time, becoming "extremely thin in some spots while retaining about twice the thickness of the thinnest spots in others, resulting in a mine-field of hard, lumpy patches of compressed batting[.]" Id. at 8. The vinyl wrapping cracks, "leaving dozens of tiny, sharp edges of cracked vinyl" that results in "small cuts and abrasions[.]" Id.

The mattresses provided by DOC sound uncomfortable. But comfort is not the hallmark of the Eighth Amendment. "The Eighth Amendment's prohibition against cruel and unusual punishment requires prison conditions to be 'humane,' though not necessarily 'comfortable.'" Jabbar v. Fischer, 683 F.3d 54, 57 (2d Cir. 2012) (citation omitted). To prevail on an Eighth Amendment claim, an inmate must "establish that the conditions of his confinement violated contemporary standards of decency[.]" Day v. Warren, 360 F. App'x 207, 208 (2d Cir. 2010). "When a prisoner asserts a claim predicated on an unsafe

25

condition, the court must determine whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." McCray v. Lee, 963 F.3d 110, 120 (2d Cir. 2020) (citation and quotation marks omitted).

The Court simply does not agree that a "compressed" mattress poses the kind of risk that society chooses not to tolerate. However, the Court finds that this is a question that is better decided with input from defendants, with the assistance of counsel, than sua sponte upon initial review. Notably, plaintiff does not allege that these mattresses are selected by DOC officials. "When a policy lacks an express intent to punish, as this one does," the Court may only "infer such an intent if the policy is either unrelated to a legitimate penological goal or excessive in relation to that goal." Jabbar, 683 F.3d at 59 (citation and quotation marks omitted). At this stage, with defendants not yet served or appearing, the Court has no information regarding the basis for DOC's decision to select these mattresses.

Accordingly, the Court will permit the Eighth Amendment conditions of confinement claim to proceed against defendants King, Martin, Peau, McPherson, and Brennan, in their individual

capacities for damages, and against defendants Quiros and Kennedy in their official capacities for injunctive relief.

**IV.   <u>ORDERS</u>**

The Court enters the following orders:

**(1)** This matter may proceed to service of process on the Eighth Amendment conditions of confinement claim against defendants King, Martin, Peau, McPherson, and Brennan, in their individual capacities for damages and against defendants Quiros and Kennedy in their official capacities for injunctive relief.

All claims for damages against any defendant in his or her official capacity are **DISMISSED, with prejudice.**

All other claims, including all claims against defendants Quiros and Kennedy in their individual capacities, are **DISMISSED, without prejudice.**

**(2)** The Court grants plaintiff <u>one</u> opportunity to file an amended complaint, correcting the deficiencies identified in this Order. Plaintiff is advised that any amended complaint will completely replace the prior complaint in the action. No portion of the original Complaint (Doc. #1) will be incorporated into the Amended Complaint by reference, or considered by the Court. Plaintiff must identify <u>all</u> defendants against whom he asserts his claims <u>in the caption</u> of the Amended Complaint. Any such Amended Complaint must be filed by **February 11, 2022.**

If plaintiff elects to file an Amended Complaint, the Court

will then conduct an initial review of the Amended Complaint to determine whether it may proceed to service on any of the claims set forth therein. Plaintiff is cautioned that if the Amended Complaint fails to correct the deficiencies noted in this Order, he may not be permitted an additional opportunity for amendment.

**(3) Plaintiff is not required to file an Amended Complaint. He may elect to proceed on the Eighth Amendment conditions of confinement claims described above, without further delay.** If plaintiff elects not to file an Amended Complaint, he need only file a Notice on the docket indicating that he wishes to proceed to service on the claims that have survived this initial review. When the Court receives that Notice, the Clerk will immediately begin the process of attempting to serve defendants.

**(4)** The clerk shall send courtesy copies of the Complaint and this Order to the DOC Office of Legal Affairs and the Office of the Attorney General.

**(5) If plaintiff changes his address at any time during the litigation of this case, he MUST notify the Court.** Failure to do so may result in the dismissal of the case. Plaintiff must provide notice of a change of address even if he remains incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If plaintiff has more than one pending case, he should indicate all of the

28

case numbers in the notification of change of address. He should also notify the defendants or defense counsel of his new address.

A separate case management and scheduling order will enter when counsel appears for any defendant. **Upon such appearance, the Court will conduct a conference with counsel for defendants and the self-represented plaintiff to set a schedule for briefing on the sufficiency of the allegations regarding the Eighth Amendment conditions of confinement claims.**

It is so ordered this 19th day of January, 2022, at New Haven, Connecticut.

                                   _____/s/_____
                                   HON. SARAH A. L. MERRIAM
                                   UNITED STATES DISTRICT JUDGE