UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROBERT STEVENSON, : |  |
| *Plaintiff,* : |  |
| : |  |
| v. : | Case No. 3:21cv234 (MPS) |
| : |  |
| ANGEL QUIROS, et al., : |  |
| *Defendants*, : |  |

## **RULING ON DEFENDANTS' MOTIONS TO DISMISS**

The plaintiff, Robert Stevenson, is a state prisoner who has filed a complaint, under 42 U.S.C. §1983, against various defendants who were employed by, or work for, the Connecticut Department of Correction ("DOC"). The complaint primarily asserts that the defendants violated plaintiff's Eighth Amendment rights through their indifference to his need for a better sleeping mattress. ECF No. 1 at 5, ¶¶ 13-19. In an Initial Review Order, Judge Merriam dismissed some claims, and terminated some parties, from this action. ECF No. 13 at 27. Plaintiff was, however, permitted to proceed with Eighth Amendment conditions of confinement claims against defendants King, Martin, Peau, McPherson, and Brennan in their individual capacities, and defendants Quiros and Kennedy in their official capacities. *Id.*

Although Judge Merriam permitted plaintiff's Eighth Amendment claims to proceed for service on the defendants, she expressed skepticism that those claims were cognizable. *Id.* at 26. Judge Merriam ultimately declined to summarily dismiss plaintiff's Eighth Amendment claims because she felt that the propriety of dismissal was a question "better decided with input from defendants, with the assistance of counsel, then *sua sponte* upon initial review." *Id.*

At Judge Merriam's invitation, the defendants have filed motions to dismiss. ECF Nos.

33 and 61. Plaintiff has responded to one of those motions, ECF No. 47,[1] and I am now prepared to rule. Because the complaint does not allege cognizable Eighth Amendment claims against the remaining defendants, I grant the defendants' motions to dismiss.

**FACTS**

I consider the facts alleged in the complaint to be true for purposes of ruling on the motions to dismiss. This ruling includes only those facts relevant to the motions.

Plaintiff suffers from chronic pain "in his back and shoulders, numbness in the legs and lower back and sharp, shooting nerve pain from the lower back to mid-thigh," which limits the "range of motion in his lower back and legs." ECF No. 1 at 6, ¶¶ 25-26. This pain prevents plaintiff from exercising, resulting in feelings of sluggishness, lethargy, and depression. *Id.* at 6-7, ¶¶ 27-28. Plaintiff's pain also prevents him from sleeping for more than an hour, after which he must stand or squat to let the pain subside temporarily. *Id.* at 7, ¶ 30. Plaintiff contends that his pain "has become steadily worse since the occurrence of the events described" in the complaint. *Id.* at 6, ¶ 25.

At the time of events alleged in the complaint, plaintiff was housed at Corrigan Correctional Center ("Corrigan") in a small cell, with a roommate, for approximately 20 to 22 hours per a day. *Id.* at 1, 7, ¶¶ 4, 31-32. Due to small cell sizes, "Connecticut prisoners" spend much of the day sitting or lying on their bunks. *Id.*, ¶ 33. Steel slabs and cement floors served as the flat surfaces of Corrigan's bunks. *Id.*, ¶ 35.

The "CT DOC prisoner mattresses" are approximately three inches thick when new but

---

[1] Because defendant McPherson was not a DOC employee during the time of events pertinent to the complaint, she is not represented by the same counsel as the other defendants (who were all DOC employees). ECF No. 59-1 at 2. This accounts for the filing of distinct motions to dismiss. Plaintiff has only responded to the motion to dismiss filed by defendants King, Martin, Peau, Brennan, Quiros, and Kennedy. He has not responded to the motion to dismiss filed by defendant McPherson.

compress to approximately one inch when in use and then only rebound to a thickness of approximately two inches. *Id.* at 7-8, ¶¶ 36, 40-41. According to plaintiff, this mattress thinning occurred because the "mattresses are designed for children with a **maximum** weight of seventy pounds." *Id.* at 7, ¶ 37.[2] Plaintiff weighs approximately 150 pounds. *Id.* at 8, ¶ 38.

Corrigan's mattresses "consist of a polyester batting core covered in a thick vinyl wrapping." *Id.* at 7, ¶ 35. As the mattresses "flatten" over time, they become "extremely thin in some spots while retaining about twice the thickness of the thinnest spots in others, resulting in a mine-field of hard, lumpy patches of compressed batting." *Id.* at 8, ¶ 42. The mattresses' vinyl coating also cracks upon use, "leaving dozens of tiny, sharp edges" that "poke through [ ] linens" and cause sleeping inmates to suffer "small cuts and abrasions." *Id.*, ¶ 43. In addition, Corrigan's mattresses are "often smelling of mildew, sometimes covered in mold spots, [and] occasionally [infested] with spiders and other insects." *Id.* at 9, ¶ 52.

Although Corrigan's mattresses deteriorate to a purportedly "unusable" condition within a week, the DOC only permits inmates to obtain a new mattress once a year. *Id.* at 8, ¶¶ 45-46. Before the DOC began to directly provide "prisoner medical services it was routine for [non-DOC] medical personnel to prescribe prisoners, such as the plaintiff, with either a 'double mattress pass' or one type or another of mattress supplement, such as 'egg crate' foam or memory foam." *Id.* at 9, ¶ 55.

On April 8, 2020, plaintiff submitted a request to the Corrigan medical unit for a double mattress pass. *Id.* at 10, ¶ 64. That same day, a nurse responded to plaintiff by noting that he

---

[2] Plaintiff supports this claim by attaching manufacturer specifications to his complaint that report Corrigan's mattresses as having a "compression" of "60 lbs. to 70 lbs." ECF No. 1 at 18. I have no familiarity with mattress industry trade language, but I question plaintiff's apparent assumption that the term "compression" refers to a recommended maximum user weight. For the purpose of ruling on the motions to dismiss, I will assume, as plaintiff claims, that Corrigan's mattresses are designed to be used by persons weighing 70 lbs. or less.

3

needed to seek such a pass from Corrigan's "custody" unit. *Id.* at 11, ¶ 65.

On April 14, 2020, plaintiff submitted another request to the medical unit complaining about his mattress and asking to be evaluated by medical staff. *Id.*, ¶ 66. The next day, a nurse responded that plaintiff's name had been placed on a sick call list, and that he could experience pain relief through exercise and stretching in his cell. *Id.*, ¶ 67. On May 16, 2020, plaintiff was seen by a nurse who prescribed Tylenol for plaintiff's back pain. *Id.*, ¶ 68. The nurse acknowledged that a low-quality mattress may have been contributing to plaintiff's chronic pain but then noted that "DOC custody controls who gets double mattresses, not medical anymore." *Id.*

On May 18, 2020, plaintiff wrote to his unit counselor with a request for a double mattress pass. *Id.*, ¶ 69. But, the next day, plaintiff's unit counselor responded that "custody doesn't issue double mattresses." *Id.*, ¶ 70. The unit counselor also suggested that plaintiff should "write to Unit Manager Peau to switch mattresses." *Id.*

On May 24, 2020, plaintiff wrote to the medical unit to explain that exercise and stretching were not alleviating his pain and to request a foam egg crate bed topper. *Id.* at 11, ¶ 71. Two days later, a nurse responded to inform plaintiff that his name had been added to a sick call list. *Id.* at 25.

On May 25, 2020, plaintiff submitted a written request to Unit Manager Peau for a double mattress. *Id.* at 11, ¶ 72. In the request, plaintiff noted that he suffered from "sharp back pain" and asserted that a double mattress "would at least take some pain off." *Id.* at 35. Plaintiff never received a response to this request. *Id.* at 11, ¶ 73.

On May 30, 2020, a nurse informed plaintiff that he should "write to Corrigan custody regarding the need for some sort of accommodation related to adequate bedding." *Id.* at 12, ¶ 75.

That same day, plaintiff wrote to Warden Martin, stating that he had been informed "that custody controls issuing double mattress[es]" and requesting a double mattress to relieve his back pain. *Id.*, at 12, 36, ¶ 76. On June 6, 2020, Warden Martin responded: "We don't issue double mattresses. If your mattress is in need of an exchange, please see your unit manager." *Id.* at 36.

On June 13, 2020, a nurse examined plaintiff's back, neck, and shoulders and observed bed sores on plaintiff's hips. *Id.* at 13, ¶ 82. The nurse prescribed 325mg of acetaminophen and placed plaintiff on a list to be seen by a medical provider. *Id.*

On June 24, 2020, plaintiff filed a health service review ("HRS") claiming that he was experiencing back pain and requesting a double mattress or bed topping. *Id.*, 13, 21 ¶ 83. On June 29, 2020, plaintiff filed a Level 1 administrative grievance reiterating the concerns noted, and requests made, in his HRS. *Id.* at 13 ¶ 85. After waiting a month without receiving a response to his initial HRS, plaintiff filed a second HRS requesting a mattress accommodation. *Id.* at 13, 27, ¶ 84.

On July 28, 2020, Nurse McPherson examined plaintiff and acknowledged that the pain in his back was likely due, at least in part, to an inadequate mattress. *Id.* at 13, ¶ 88. However, Nurse McPherson noted that she "simply did not have the authority to prescribe an appropriate mattress or a foam supplement." *Id.* Therefore, Nurse McPherson merely prescribed plaintiff pain medication. *Id.*

On July 30, 2021, Administrative Remedies Coordinator King returned plaintiff's Level 1 grievance without disposition. *Id.*, ¶ 86. In doing so, ARC King explained: "[T]his issue is not one for custody. You need to file a health service review." *Id.* at 30. Plaintiff subsequently discussed the return of his grievance with ARC King and was told, "it's clearly not a custody issue, deal with medical." *Id.* at 13, ¶ 87.

On August 17, 2020, Nurse Brennan rejected plaintiff's initial HSR. *Id.* at 14, ¶ 89.[3] As explanation for this disposition, Nurse Brennan wrote: "Seen by MD on 7/28/20. Xrays of back were done and the results are normal. No clinical indication for … double mattress/bed topping." *Id.* at 21.

On September 8, 2020, plaintiff filed an appeal from the rejection of his HSR. *Id.* at 14, ¶ 93. This appeal was denied with the following explanation: "there is no clinical indication for a double mattress. You may refile with diagnosis treatment." *Id.* at 19.

On September 10, 2020, Nurse Brennan denied plaintiff's second HSR. *Id.* at 27. This time, Nurse Brennan explained: "Medical does not give 'double mattress pass' or 'bed topping.' You may sign-up for sick call to be evaluated for 'medical mattress.'" *Id.*

On September 11, 2020, plaintiff filed an appeal from the denial of his second HSR. *Id.* at 29. This appeal was denied with the following explanation: "As stated medical does not issue double mattresses or 'bed toppings.' Please sign up for sick call to be evaluated for a medically ordered mattress." *Id.*

At some point, the DOC changed its policy to allow custody to issue orthopedic mattresses. *Id.* at 14, ¶ 94. However, the plaintiff asserts that this policy is "applied unequally," with favoritism, and "irrespective of need." *Id.*[4]

**LEGAL STANDARD**

To survive a motion to dismiss filed pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

---

[3] Plaintiff asserts that Nurse Brennan returned his HSR without disposition. ECF No. 1 at 14, ¶¶ 89-90. However, HSR records attached to the complaint show that Nurse Brennan "rejected" plaintiff's HSR. *Id.* at 21. Administrative directives then in effect recognized a "rejection" as a permissible HRS disposition. *See* Administrative Directive 8.9(12)(A) (effective date July 24, 2012).

[4] In his response to the defendants' motion to dismiss, plaintiff reports that the DOC issued new, higher-quality mattresses to the entire inmate population on June 15, 2022. ECF No. 47 at 4.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557).

Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Id.* (*citing Twombly*, 550 U.S. at 555). Nevertheless, when reviewing a motion to dismiss, the court must accept well-pleaded factual allegations as true and draw "all reasonable inferences in the nonmovant's favor." *Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F.3d 692, 699 (2d Cir. 2010).

Although a *pro se* complaint must be liberally construed "to raise the strongest arguments it suggests," *pro se* litigants are nonetheless required to "state a plausible claim for relief." *Walker v. Shchult*, 717 F.3d 119, 124 (2d Cir. 2013) (brackets, internal quotation marks, and citations omitted).

**DISCUSSION**

In her Initial Review Order, Judge Merriam permitted plaintiff to proceed with individual capacity Eighth Amendment conditions of confinement claims against ARC King, Warden Martin, Unit Manager Peau, Nurse McPherson, and Nurse Brennan. These claims are all premised on the theory that the defendants exhibited deliberate indifference to plaintiff's need for a better mattress. *See* ECF No. 13 at 23-27. To adequately plead an Eighth Amendment conditions of confinement claim, an inmate-plaintiff must allege: "(1) a deprivation that is objectively, sufficiently serious … and (2) a sufficiently culpable state of mind on the part of the

defendant official." *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001). In their motions to dismiss, the defendants contend that plaintiff has not alleged facts satisfying the objective or subjective elements of his claims. ECF No. 33-1 at 3-8; ECF No. 61-1 at 4-7.

### A. Objective Element

Because "sleep is critical to human existence," some "conditions that prevent sleep have been held to violate the Eighth Amendment." *Walker*, 717 F.3d at 126. Notwithstanding the importance of sleep, inmates are not constitutionally entitled to a *comfortable* mattress. *See Bell v. Luna*, 856 F. Supp. 2d 388, 396 (D. Conn. 2012) ("[T]he Constitution does not call for pillowtop mattresses in prisons.") Inmates do, though, have a right to functional and sanitary bedding. *See Walker*, 717 F.3d at 121, 126-29 (top-level bunk measuring just twenty-eight inches across contributes to an adequately pled Eighth Amendment violation); *see also Bell*, 856 F. Supp. 2d at 398 (inmate pled plausible Eighth Amendment violation by alleging the he slept on a "torn, unstuffed, unhygienic mattress" for seven months.)

In this case, the mattress described by plaintiff sounds more uncomfortable than unconstitutional. Providing an inmate with a thin mattress is not, by itself, a violation of the Eighth Amendment. *See Thomas v. Doe*, 2016 WL 3951035 at *1 (C.D. Ill. July 20, 2016) ("While the thin mattress may have been uncomfortable, nothing suggests that Plaintiff suffered the type of extreme deprivation required to state a constitutional claim.") Beside its thinness, plaintiff also disparages his mattress for its lumps and cracked vinyl covering. But, again, these alleged conditions merely permit the inference that plaintiff's mattress was uncomfortable. And the Eighth Amendment does not guarantee comfort. *See Rhodes v. Chapman*, 452 U.S. 337, 349

(1981) ("[T]he Constitution does not mandate comfortable prisons.")[5]

Although plaintiff has not alleged facts showing that his mattress was constitutionally inadequate for a typical inmate, he has pled facts permitting an inference that he has satisfied the objective element of an Eighth Amendment claim because his allegations suggest using the mattress caused him serious pain due to his own preexisting medical conditions. *See Henderson v. Quiros*, 3:21-cv-1078, 2021 WL 5359739 at *5 (D. Conn. Nov. 17, 2021) (A standard mattress may violate an inmate's Eighth Amendment rights if the inmate has "a medical condition requiring a non-standard mattress to protect against further serious damage to [his or her] health.") Plaintiff plausibly claims that he suffers from severe back pain that is aggravated by his thin, lumpy mattress. Arguing otherwise, the defendants contend that plaintiff cannot establish a causal link between his mattress and his back pain. ECF No. 33-1 at 4-5. But, at this pleading stage in proceedings, a causal link may be inferred through plaintiff's own observations and the medical opinions of causation that plaintiff attributes to two nurses. *See Jones v. City of New York*, 2020 WL 1644009 at *8 (S.D.N.Y. April 2, 2020) (pleading adequate because it gave "rise to a plausible, common-sense inference that the standard-issue mattress either exacerbate[d] or cause[d] Plaintiff's chronic and substantial back pain.") Thus, I finds that plaintiff has adequately pled the objective element of a deliberate indifference claim.

### B. Subjective Element

To satisfy the subjective element of a deliberate indifference claim, a plaintiff must establish that a defendant-official acted with a culpable mental state exceeding mere negligence.

---

[5] The complaint briefly notes that Corrigan's mattresses are "often smelling of mildew, sometimes covered in mold spots, [and] occasionally [infested] with spiders and other insects." ECF No. 1 at 9, ¶ 52. Prison officials would violate the Eighth Amendment by providing inmates grossly unsanitary mattresses. *See Bell*, 856 F. Supp. 2d at 397 (denying motion to dismiss when inmate was allegedly made to sleep on a mattress having an "odorous smell of mildew.") However, the complaint never alleges that *plaintiff's* mattress was mildewy, moldy, or insect infested. And plaintiff never reports having complained to prison officials about the *sanitary* quality of his mattress. Thus, the Court does not construe the complaint to allege that plaintiff's mattress was unsanitary.

*Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020). Specifically, a plaintiff must show that a defendant acted with "subjective recklessness" as the term is used in criminal law. *Farmer v. Brennan*, 511 U.S. 825, 839-40 (1994). This entails a showing that a defendant "personally knew of and disregarded an excessive risk" to an inmate's health or safety. *Tangreti*, 983 F.3d at 619.

Because prison officials may incur § 1983 liability only through their own actions, I assess the sufficiency of plaintiff's pleading with respect to each individual capacity defendant. *See id.* (["A] plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" (quoting *Iqbal*, 556 U.S. at 676)).

1. **ARC King**

Plaintiff contends that ARC King exhibited deliberate indifference to his need for a mattress accommodation by returning an administrative grievance related to this issue without disposition. However, ARC King was only assigned to review non-medical inmate grievances. And, when returning plaintiff's grievance, ARC King advised plaintiff that his concerns could be administratively addressed through the filing of an HSR. By this time, plaintiff had already filed an HSR and nothing alleged in the complaint suggests that its adjudication was, in any way, delayed by the return of his non-medical grievance.

ARC King did not exhibit reckless indifference to plaintiff's health or safety by directing him to utilize an administrative procedure through which his need for a mattress accommodation could be, and in fact was, assessed. *See Bell*, 856 F. Supp. 2d at 400 (supervisory official not personally involved in alleged constitutional violation because she "referred [plaintiff] to the officials … who could best help [him] obtain the relief he sought.") Thus, I dismiss plaintiff's claim against ARC King.

## 2. Warden Martin

Plaintiff contends that Warden Martin exhibited deliberate indifference to his need for a mattress accommodation by denying his written request for a double mattress. However, the record of correspondence between plaintiff and Warden Martin (attached as an exhibit to the complaint) does not support this contention.

Although Warden Martin was terse in responding to plaintiff's mattress complaint, he was not entirely unhelpful. Warden Martin addressed plaintiff's mattress concerns by suggesting the possibility of arranging a mattress replacement with a unit manager. Also, in his written request, plaintiff merely described his back pain as "sharp." ECF No. 1 at 36. Reading plaintiff's request, Warden Martin would have been led to think that plaintiff was experiencing mere discomfort, rather than the sort of extreme pain that could give rise to a viable Eighth Amendment cause of action. In any event, Warden Martin did not ignore the plaintiff's complaint but directed him to his unit manager for a possible remedy. Thus, I dismiss plaintiff's claim against Warden Martin.

## 3. Unit Manager Peau

Plaintiff contends that Unit Manager Peau exhibited deliberate indifference to his need for a mattress accommodation by not responding to his written request for a double mattress. Plaintiff *does not* allege that Unit Manager Peau ever received his request. But, even if he had, "allegations that an official ignored a prisoner's letter [are] not enough to establish" the official's personal involvement in an alleged violation of constitutional rights. *Atkins v. Cty. of Orange*, 251 F. Supp. 2d 1225, 1233 (S.D.N.Y. 2003). Also, in his written request, plaintiff merely noted that he was experiencing "sharp back pain." ECF No. 1 at 35. And, again, I find that a complaint of "sharp" back pain does not place a prison official on notice that an inmate is experiencing pain

of such a magnitude that it implicates the Eighth Amendment. Thus, I dismiss plaintiff's claim against Unit Manager Peau.

### 4. Nurse McPherson

Plaintiff contends that Nurse McPherson exhibited deliberate indifference to his need for a mattress accommodation by neglecting to prescribe a non-standard mattress or foam supplement. However, plaintiff also alleges facts indicating that Nurse McPherson had no authority to order the provision of non-standard bedding. And Nurse McPherson did address plaintiff's complaints of back and shoulder pain through a pain medication prescription. Plaintiff cannot fault Nurse McPherson for failing to rectify a condition of confinement over which she had no control. *See Kregler v. City of New York*, 821 F. Supp. 2d 651, 658-59 (S.D.N.Y. 2011) (dismissing deliberate indifference claims against defendants who "lacked the authority to prevent the alleged constitutional violation caused by their supervisor."); *see also Rogers v. Lamont*, 3:21-cv-1722 (OAW), 2022 WL 16855969 at *4 (D. Conn. Nov. 10, 2022) (dismissing a condition of confinement claim against a correctional officer who was not alleged to have any authority to alter challenged protocols). Thus, I dismiss plaintiff's claim against Nurse McPherson.

### 5. Nurse Brennan

Plaintiff contends that Nurse Brennan exhibited deliberate indifference to his need for a mattress accommodation by unfavorably adjudicating his HSRs. However, the complaint does not support an inference that Nurse Brennan capriciously denied plaintiff's requests for an mattress accommodation.

In her response to plaintiff's initial HSR, Nurse Brennan noted that a recent x-ray examination of plaintiff's back reported normal results. From this evidence, Nurse Brennan

concluded that plaintiff had no clinical need for a mattress accommodation. ECF No. 1 at 21. Plaintiff faults Nurse Brennan for relying on his negative x-ray results as a basis for her decision-making and contends that medical records documenting his complaints of back pain and pain medication prescriptions should have led her to the conclusion that he required a mattress accommodation. ECF No. 47 at 3. But plaintiff cannot establish a violation of his Eighth Amendment rights simply by proffering a basis for disagreement with a health professional's treatment decision. *See Laurent v. Edwin*, 528 F. Supp. 3d 69, 87 (E.D.N.Y. 2021) ("[I]t is generally understood that the ultimate decision of whether or not to administer a treatment or medication is a medical judgment that, without more, does not amount to deliberate indifference.") (Internal quotation marks and citation omitted).

When denying plaintiff's second HSR, Nurse Brennan noted that plaintiff could sign up for a medical appointment to be evaluated for a "medical mattress." ECF No. 1 at 27. This response, again, does not exhibit indifference to plaintiff's plight. It was reasonable for Nurse Brennan to withhold a mattress accommodation until plaintiff underwent an evaluation showing that he was actually in need of such an accommodation.

Plaintiff also argues that Nurse Brennan improperly deviated from procedures set forth in administrative directives when adjudicating his HSRs. ECF No. 47 at 3. But "an inmate has no constitutional right … to have an administrative remedy properly processed or investigated." *Burns v Lupis*. 3:23-cv-23 (KAD) 2023 WL 1801704 at *4 (D. Conn. Feb. 7, 2023). Thus, I dismiss plaintiff's claim against Nurse Brennan.

### C. Official Capacity Claims

Plaintiff has been permitted to proceed with official capacity claims against defendants Quiros and Kennedy for the purpose of seeking injunctive relief in the form of "adequate

bedding" and medical treatment. ECF No. 13 at 12-13, 26-27. Because plaintiff has not alleged cognizable violations of his Eighth Amendment rights, the defendants argue that the Court should dismiss his official capacity claims. ECF No. 33-1 at 9. I agree that plaintiff cannot proceed with a request for injunctive relief without pleading a cognizable violation of his constitutional rights. *See Parker v. Brann*, 2022 WL 18402115 at *5 n.4 (S.D.N.Y. Dec. 17, 2022) (recommending the dismissal of a plaintiff's official capacity claims because he "failed to establish that his constitutional rights have been violated.") Thus, I dismiss plaintiff's official capacity claims against defendants Quiros and Kennedy.

I also note that plaintiff reports having received a new, higher-quality mattress from the DOC on August 15, 2022. ECF No. 47 at 4. So to the extent plaintiff seeks injunctive relief in the form of "adequate bedding," his official capacity claims are now moot.

## CONCLUSION

The defendants' Motions to Dismiss, [**ECF. Nos. 33 and 61**], are **GRANTED**. The plaintiff's complaint [**ECF No. 1**] is **DISMISSED**.

**If plaintiff believes there are additional facts that he can allege that will overcome any of the deficiencies identified in this ruling, he may file a proposed amended complaint within 30 days of this order.** Any proposed amended complaint will not be construed to plead any claims other than those that were permitted to proceed in the Court's Initial Review Order [**ECF No. 13**]. The plaintiff is reminded that any amended complaint will replace and supersede the existing complaint and may not refer to or incorporate by reference allegations in the existing complaint. If plaintiff fails to file a proposed amended complaint within 30 days of this order, his claims will be **DISMISSED** with prejudice and the Clerk will be directed to close this case.

**SO ORDERED** at Hartford, Connecticut, this 27th day of February 2023.

/s/
Michael P. Shea, U.S.D.J.